**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (AKRON)**

| | |
|---|---|
| **IN RE:**<br><br>**AKRON THERMAL, LIMITED PARTNERSHIP**<br><br>Debtor and Debtor-in-Possession | CASE NO.: 07-51884<br><br>CHAPTER 11 |
| **AKRON THERMAL, LIMITED PARTNERSHIP**<br><br>Plaintiff<br><br>Vs.<br><br>**THE COMMUNITY HALL FOUNDATION, INC. dba AKRON CIVIC THEATRE**<br><br>Defendant | ADV. PRO. NO.: 07-05131<br><br>THE HONORABLE JUDGE MARILYN SHEA-STONUM |

**PRE-HEARING BRIEF ON AKRON CIVIC THEATRE'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

## I. STATEMENT OF ISSUES

The Defendant, The Community Hall Foundation, Inc. doing business as Akron Civic Theatre (hereinafter referred to as "Akron Civic"), respectfully requests in its Motion and Amended Motion filed on August 29, 2007 an Order pursuant to Bankruptcy Rule 7065 granting Akron Civic a

Temporary Restraining Order and Preliminary Injunction against the Plaintiff, Akron Thermal, Limited Partnership (hereinafter referred to as "Akron Thermal"), and any person in active concert or participation with it, requiring and enjoining Akron Thermal to reconnect and to maintain service for steam and hot and/or chilled water service at 182 South Main Street, Akron, Ohio 44308 (hereinafter referred to as the "Premises") and enjoining it from disconnecting service for steam and hot and/or chilled water at the Premises during the pendancy of this Adversary Proceeding.

## II. JURISDICTION AND VENUE

This adversary proceeding (Case No: 07-5131) arose from the case of *In re Akron Thermal, Limited Partnership* (Case No. 07-51884) now pending in this Court under Chapter 11 of Title 11 of the United States Code. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 105. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Venue is proper in this Court pursuant to 28 U.S.C. § 1409 as this is a proceeding arising under Title 11 in a case pending in this Court.

## III. STATEMENT OF THE CASE AND FACTS

A. The Community Hall Foundation, Inc. was incorporated in the State of Ohio on April 20, 1965 and has done business as Akron Civic Theatre since its incorporation.

B. Upon information and belief, Akron Thermal has delivered steam and hot and/or chilled water service to the Premises since August 2005. In September 2001, Akron Civic transferred title of the Premises to the Summit County Port Authority to facilitate a loan to Akron Civic for major renovations to the Akron Civic Theatre.

C. Akron Thermal has delivered steam and hot and/or chilled water to the Premises since August 2005.

D.  Pursuant to the Ohio Public Utilities Commission's Opinion and Order in Case No. 05-05-HT-AIR dated September 28, 2005, the rules, regulations and rates governing the supply of steam and hot water services on or after September 28, 2005 is governed by the tariff known as P.U.C.O. No. 2 (hereinafter referred to as the "Tariff").

E.  To the best of the parties knowledge, there is no contract entered between Akron Civic and Akron Thermal. Further, Akron Civic has no contractual liability to Akron Thermal to pay for steam and hot and/or chilled water services supplied to the Premises.

F.  According to the Tariff, a "customer" is defined as "the party(s) contracting for said service." Additionally, paragraph 100.2 entitled "Parties to Contract" states "[a]ll contracts for service shall be between ATLP and the Owner of the premises served. A tenant of the Owner may cosign with the Owner as a guarantor of payment." Akron Civic is not the owner of the Premises and never cosigned for or guaranteed payment to Akron Thermal.

G.  Through an arrangement between the City of Akron and Akron Thermal in mid-to-late 2005, Akron Civic asserts that the parties agreed that steam invoices to Akron Civic would be credited toward amounts owed to the City of Akron by Akron Thermal.

H.  Except for the payment tendered on August 27, 2007, Akron Civic has not tendered any payment to Akron Thermal for steam and hot and/or chilled water services at the Premises since August 2005.

I.  Akron Thermal has taken no action to collect the amounts claimed owed for steam

and hot and/or chilled water services delivered to the Premises until it transmitted a collection letter to Akron Civic dated June 22, 2007.

J. On or about June 27, 2007, Akron Thermal filed a Motion for Turnover (hereinafter referred to as the "Turnover Motion") against Akron Civic claiming the pre-Petition amount owed to Akron Thermal by Akron Civic was $181,414.23.

K. The Turnover Motion was converted into this Adversary Proceeding. Akron Thermal filed a Complaint against Akron Civic on or about July 3, 2007. Akron Thermal filed an Amended Complaint on or about July 20, 2007.

L. In its Amended Complaint, Akron Thermal contends that Akron Civic owes Akron Thermal the amount of $181,414.23 for a pre-Petition accounts receivable.

M. Akron Civic asserts that the pre-Petition amount of $181,414.23 has been satisfied as stated in its defenses set forth in its Answer and Amended Answer.

N. On or about August 23, 2007, Akron Civic received a "five-day notice" dated August 22, 2007 from Akron Thermal. Said notice demanded that Akron Civic pay $188,580.06 by August 27 to avoid cancellation of steam and hot and/or chilled water services to the Premises.

O. On or about August 27, 2007, Akron Civic tendered payment to Akron Thermal in the amount of $7,165.83, which represents the total amount claimed in the five-day notice [$188,580.06 less the pre-Petition amount claimed owed in Akron Thermal's Amended Complaint of $181,414.23 equals $7,165.83].

P. On or about August 28, 2007, Akron Thermal notified counsel for Akron Civic that it had rejected Akron Civic's tender of $7,165.83. Further, Akron Thermal stated that it would return the check forthwith and proceed to cancel steam and hot and/or

chilled water services at the Premises.

Q. A calendar of scheduled events and activities to occur at Akron Civic Theatre is attached as Exhibit A.

## IV. LAW AND ARGUMENT

A temporary restraining order "serves as an equitable policing matter to prevent the parties from harming one another during the litigation; to keep the parties, while the suit goes on, as much as possible in the respective positions they occupied when this suit began." *see Univ. of Texas v. Camenisch*, 451 U.S. 390 395 (1981); *Nat'l Bd. of YMCA v. Flint YMCA*, 764 F.2d 199, 201 (6th Cir. 1985); *Hamilton Watch Co. v. Benrus Watch Co*., 206 F.2d 738, 742 (2nd Cir. 1953).

In the present case, Akron Civic needs injunctive relief to prevent Akron Thermal from harming it further during the course of this litigation and to keep the parties, while this lawsuit goes on, as much as possible in the respective positions they occupied before Akron Thermal served Akron Civic with the five (5) day cancellation notice and turned off the steam and hot water service. Injunctive relief is appropriate because Akron Civic has tendered the post-petition balance owed in the amount of $7,165.83. The pre-Petition balance in the amount of $181,414.23 is the subject matter of the Adversary Proceeding which claimed amount is in dispute and Akron Civic asserts that it has a valid defense.

Rule 65 of the Federal Rules of Civil Procedure governs the implementation of a preliminary injunction, which is made applicable to an adversary proceeding in Bankruptcy Rule 7065 of the Federal Rules of Bankruptcy Procedure. *Nat'l City Bank v. Hartman* (*In re Hartman*), 345 B.R. 826, 828 (N.D. Ohio 2005). Under Bankruptcy Rule 7065, this Court must consider and balance the following four elements in deciding whether to issue a Temporary Restraining Order and Preliminary Injunction in favor of Akron Civic and against Akron Thermal:

1. Whether Akron Civic has a substantial likelihood or probability of success on the merits;

2. Whether Akron Civic will suffer irreparable injury if relief is not granted;

3. Whether the Preliminary Injunction would unjustifiably harm third parties; and

4. Whether the public interest would be served by issuing the Preliminary Injunction.

*Gonzales v. Nat'l Bd. of Med. Examiners,* 225 F.3d 620, 625 (6th Cir. 2000); *see In re Elec. Theatre Rests. Corp*., 53 B.R. 458, 461 (N.D. Ohio 1985).

The four elements outlined above do not serve as a litmus test for awarding injunctive relief; rather the elements should be balanced by the Court in order to determine whether injunctive relief is justified. These four elements "do not establish a rigid and comprehensive test for determining the appropriateness for preliminary injunctive relief"; rather, they are "factors to be balanced, not prerequisites that must be met." *Friendship Materials, Inc. v. Michigan Brick, Inc*., 679 F.2d 100, 102 (6th Cir. 1982). As demonstrated through the Affidavit of Brian Cummins and through testimony to be presented at the hearing on this Motion, a balancing of these four factors entitles Akron Civic to injunctive relief.

The Akron Civic will meet its burden by showing that it is clearly entitled to the relief sought in its Motion and Amended Motion. S*ee*, Cincinnati Bengals v. Bergey 453 F. Supp. 129 at 145 (" . . . In order to be entitled to such relief plaintiff had the burden of establishing a clear case of irreparable injury and of convincing the Court that the balance of injury favored the granting of the injunction) *citing* Set-O-Type Co. v. American Multigraph Co., 55 F.2d 800 (6th Cir., 1932). (Probability of success on the trial must also be shown) H. E. Fletcher Co. v. Rock of Ages Corp., 326 F.2d 13 (2d Cir., 1963). Akron Civic's burden of proof is a lesser burden than at a trial on the merits.1

1 *See Wilcox v. United States,* 888 F.2d 1111, 1114 (6th Cir.1989): "The purpose

## A. AKRON CIVIC WILL LIKELY SUCCEED ON THE MERITS.

The facts presently available to Akron Civic indicate that there is a substantial likelihood that Akron Civic will prevail in this action. Akron Civic asserts that it has two valid defenses: (i) to the extent it has any liability to Akron Thermal for payment of steam and hot and/or chilled water service to the Premises, Akron Civic has satisfied all or a substantial portion of the pre-Petition obligation; and (ii) as between Akron Thermal and Akron Civic, Akron Civic has no contractual liability to Akron Thermal to pay for steam and hot and/or chilled water services to the Premises according to the Tariff, which also affords the owner of the Premises with a complete defense.

### 1. The pre-Petition debt was satisfied.

Akron Civic asserts that it will present documents and testimony to support its argument and the City of Akron's position that Akron Thermal received credit for steam and hot and/or chilled water delivered to the Premises against amounts due and owing by Akron Thermal to the City of Akron. Specifically, Akron Civic will present financial records prepared by Akron Thermal dated **June 16, 2006, November 28, 2006 and May 4, 2007** evidencing that Akron Thermal received a credit for amounts claimed owed by Akron Civic applied against amounts owed to the City of Akron.[2] While Akron Thermal presumptively will maintain that the credit was never received, their

---

of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.,* at 395, 101 S.Ct. at 1834. "A party thus is not required to prove his case in full at a preliminary-injunction hearing ..., and the findings of fact and conclusions ***1114** of law made by a court granting a preliminary injunction are not binding at trial on the merits...." *Id.,* at 395, 101 S.Ct. at 1834; *accord In re DeLorean Motor Co.,* 755 F.2d 1223, 1230 (6th Cir.1985)."

2 Akron Civic asserts that these documents were prepared prior to any settlement negotiations and are admissible under the Federal Rules of Evidence. *See*, ABM Industries, Inc. v. Zurich American Ins. Co., N.D.Cal.2006, 237 F.R.D. 225 (By its terms, the rule governing admission of settlement evidence does not require exclusion of any evidence otherwise discoverable simply

own inaction is the most telling evidence. Akron Thermal has displayed post-Petition how easy it would have been to collect the debt from late 2005 to 2007. Akron Thermal had the right and ability to turn off steam and hot and/or chilled water services to the Premises but only did so after the Bankruptcy Case was filed. If Akron Thermal does not agree to credit the bill, then it would have had an easy collection lever to threaten, to turn off and to demand payment. Its own inaction is the best evidence of its intent.

The documents prepared by Akron Thermal will support this theory as does the testimony of the City of Akron employees. The evidence will demonstrate that the pre-Petition balance of $181,414.23 has been satisfied. Further, on August 27, 2007, Akron Civic tendered the post-Petition amount due of $7,165.83 (Check No. 6523) by hand delivering this check to Janet Stott. A copy of the hand-delivered letter to Richard Pucak, Check No. 6523 in the amount of $7,165.83 and the signature card of Janet Stott evidencing receipt of said Check are attached as Exhibits B and C and incorporated herein.

2. Akron Civic has no contractual liability to Akron Thermal.

Akron Thermal and Akron Civic did not enter into a written contract for steam and hot and/or chilled water services to be delivered to the Premises. The Tariff requires that all contracts be

---

because it is presented in the course of compromise negotiations.); Commonwealth Aluminum Corp. v. Stanley Metal Ass'n, W.D.Ky.2001, 186 F.Supp.2d 770 (Correspondence between aluminum company and supplier was admissible for purposes of satisfying the statute of frauds in breach of contract action brought by company arising out of supplier's alleged failure to comply with oral contracts, and was not precluded under evidence rule precluding the introduction of evidence relating to attempts to compromise a claim which is disputed as to either validity or amount, where the correspondence appeared to admit to the validity of the alleged contracts and did not dispute the total amount alleged due.) Megarry Bros., Inc. v. U. S. for Use of Midwestern Elec. Const., Inc., C.A.8 (N.D.) 1968, 404 F.2d 479. (Unaccepted offers of compromise are not admissible in evidence as admissions, but admissions with respect to independent facts which are made during course of compromise negotiations may be received in evidence.)

entered between the owner of the Premises and Akron Thermal and the tenant may guaranty payment. Akron Civic did not guaranty payment.

Akron Civic is likely to succeed on the merits in the Adversary Proceeding based the defenses set forth above including the satisfaction of the pre-Petition balance through credits taken by Akron Thermal and by payment of the post-Petition obligation.

**B. AKRON CIVIC WILL BE IRREPARABLY HARMED IF THE REQUEST FOR INJUNCTIVE RELIEF IS NOT GRANTED.**

If Akron Thermal is not required to maintain steam and chilled water service to the Premises, Akron Civic will be irreparably harmed. See Exhibit A for the calendar of events scheduled for Akron Civic during the upcoming year. In order to induce patrons to attend the Akron Civic and to comply with local health and safety regulations, steam and chilled water will need to be present in order to open the doors and serve the public. There is no question that Akron Civic will be irreparably harmed as will the public in general if Akron Thermal is not ordered to maintain steam and chilled water service at the Premises. Akron Thermal's turn off will irreparably harm Akron Civic if Akron is not ordered to reconnect service and Akron Thermal enjoined from disconnecting Akron Civic's hot and/or chilled water service at the Premises. Akron Civic will not be able to continue business operations without steam and/or chilled water service at the Premises.

**C. NO THIRD PARTIES WILL BE HARMED BY ISSUANCE OF THE ORDER.**

While the issuance of the Order contemplated by Akron Civic enjoining Akron Thermal from disconnecting service to the Akron Civic will not harm third parties. There is an extreme contrary result if the Order is not granted. Akron Civic will be unable to continue to operate without steam and chilled water service. Steam is essential in order to enable Akron Civic to create hot water. Hot

water is necessary in order to comply with local health ordinances. If service is not maintained for steam and chilled water, during extreme hot and cold temperatures, Akron Civic patrons would be unable to attend programs scheduled to be presented at the Akron Civic. Even the threat of terminating the steam or chilled water service may effect the Akron Civic's ability to book potential renters and sell tickets to events at the Akron Civic. If the Akron Civic is unable to operate, and Akron Thermal prevails in the adversary proceeding, it would have no ability to generate income to pay the account receivable claimed due. Therefore, numerous parties including patrons, potential renters, performers, the Akron Civic and Akron Thermal and the citizens of the City of Akron and its surrounding communities, would be harmed if the Court does not issue the Orders requested by the Akron Civic.

**D. THE PUBLIC INTEREST WILL BE SERVED BY ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION.**

The Akron Civic Theatre known also as "The Jewel on Main Street" was built in 1929 and has been used as an entertainment facility for over seventy-five (75) years. There is substantial public interest favoring this Court issuing a restraining order and preliminary injunction to enable the Civic Theatre to continue to operate for the benefit of the citizens of Akron and the surrounding communities. A summarized history of the Akron Civic is attached as Exhibit D. A portion of this history briefly explaining the impact the Akron Civic Theatre has on the community is set forth below:

> The success of the Akron Civic Theatre is a testament, particularly during these difficult economic times, to the support of our community and the vision of its leaders. Support for the Civic has come to be understood for what it is - an investment in our community that fuels the economy and drives downtown revitalization by hosting the best in local, national, international entertainment and events. Behind a restoration and expansion of this

> magnitude stands a litany of organizations and individuals who have worked diligently in the belief that this project would make the community a better place to live, work and play. This help came locally, regionally and nationally.

Public policy favors the continuous operation of the Akron Civic Theater and an order maintaining the service of steam and/or hot water service to Akron Civic while the parties litigate the merits of Akron Thermal's Amended Complaint filed in this proceeding. Without steam and hot and chilled water service, Akron Civic will be forced to close and the Akron Civic Theater, the citizens of Akron, the citizens of Summit County and its surrounding communities, local businesses (including restaurants, bars, media outlets, printers, etc.) renters of the Akron Civic, schools (from pre-school through college) performers, and the volunteers, employees, officers and Board of Trustees of the Akron Civic Theater, will be irreparably harmed.

**WHEREFORE**, Akron Civic requests the following relief:

A. A Temporary Restraining Order affording the Defendant, the Community Hall Foundation, Inc., dba the Akron Civic Theatre, relief from immediate and irreparable injury, loss or damage from the Plaintiff, Akron Thermal Limited Partnership by requiring Plaintiff Akron Thermal Limited Partnership to turn on the steam and hot and chilled water service at 182 S. Main Street, Akron, Ohio 44308 and to continue service at this location during the pendency of this adversary proceeding.

B. A Preliminary Injunction affording the Defendant, the Community Hall Foundation, Inc., dba the Akron Civic Theatre, relief from immediate and irreparable injury, loss or damage from the Plaintiff, Akron Thermal Limited Partnership by requiring Plaintiff Akron Thermal Limited Partnership to turn on the steam and hot and chilled water service at 182 S. Main Street, Akron, Ohio 44308 and to continue service at this location during the pendency of this adversary proceeding.

C. That this Court order as security for payment that no bond be required but instead that Akron Civic, or any other entity liable, pay all valid monthly post-Petition invoices when due for steam and hot and/or chilled water service delivered to the Premises.

Respectfully submitted:

**BERNLOHR WERTZ, L.L.P.**

*/s/ Christopher J. Niekamp*
Christopher J. Niekamp (0051221)
Michael J. Palumbo (0081718)
The Nantucket Building
23 South Main Street, Third Floor
Akron, Ohio 44308-1822
Telephone: (330) 434-1000
Facsimile: (330) 434-1001
E-Mail: cjn@b-wlaw.com
michael@b-wlaw.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above was transmitted via e-mail, facsimile and regular mail on this 29th day of August, 2007, upon the following

Robert M. Stefancin, Esq.
Daniel R. Swetnam, Esq.
Tyson A. Crist, Esq.
Schottenstein, Zox & Dunn Co., L.P.A.
250 West Street
Columbus, Ohio 43215
Telephone: (216) 394-5068
(614) 462-2243
Facsimile: (216) 394-5085
(614) 224-3266
E-Mails: rstefancin@szd.com
tcrist@szd.com
*Attorneys for Debtor*

Brian Skidmore
National City Center
One Cascade Plaza, 12th Floor
Akron, Ohio 44308
Telephone:
Facsimile: (330) 253-9657
E-Mail: ees@skidmorelaw.com

*/s/ Christopher J. Niekamp*
Christopher J. Niekamp (0051221)
*Attorney for Defendant*

**EXHIBIT A**

Search By: Month...  Year... Venue...  Genre... Keyword/Phrase... Find Events Reset

## Upcoming Events

| Event | Date | Time |
|---|---|---|
| Chrissie Hynde & Friends | 9/15/2007 | 8:00 pm |
| *Chrissie Hynde & Friends rock the Akron Civic Theatre!* | | |
| The Pink Floyd Experience | 10/4/2007 | 8:00 pm |
| *The Pink Floyd Experience, theatrical performance with mind-blowing lights and unsurpassed sound.* | | |

6523

COMMUNITY HALL FOUNDATION, INC.
DBA AKRON CIVIC THEATRE

**EXHIBIT B**

Akron Thermal

SFFUNDEZ-1 TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 718-761-9455 HGZ2ZT0010000 L03SF018044

6523

COMMUNITY HALL FOUNDATION, INC.
DBA AKRON CIVIC THEATRE

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER

6523

COMMUNITY HALL FOUNDATION, INC.
DBA AKRON CIVIC THEATRE
182 S. MAIN ST. (330) 535-3179
AKRON, OH 44308

FIRSTMERIT KILLIAN OFFICE www.firstmerit.com

56-55/412 DATE 8/27/07 CHECK AMOUNT 7,165

PAY Seven thousand one-hundred sixty-five 83/100 dollars

TO THE ORDER OF: Akron Thermal Ltd.

Ralph Palmerano MP

[signature] MP

⑈006523⑈ ⑆041200555⑆ ⑈005070298 7⑈

**EXHIBIT C**

RECEIVED CHECK 6523

$ 7,165.83

energy solutions

CIVIC AKRON CIVIC THEATRE

Show Information Directions Guest Guide Support the Civic Venues Links

# History of Akron Civic Theatre

Designed by John Eberson and built by Marcus Loew in 1929, the Civic Theatre has entertained Akronites for 75 years.

Long recognized among the community's cultural landmarks, the Akron Civic Theatre has a rich and spectacular history.

It has provided the community with a venue for quality entertainment and live performances for over seventy years.

During that time, hundreds of thousands of people have been thrilled by various theatrical presentations, both on stage and on screen.

The theater was built in 1929 by Marcus Loew and designed by famed theater architect, John Eberson. The interior structure was fashioned after a Moorish castle featuring Mediterranean decor, including medieval carvings, authentic European antiques and Italian alabaster sculptures.

Among facilities of its size, the Civic is one of only five remaining atmospheric theaters in the country where patrons experience a twinkling star-lit sky and intermittent clouds moving across the horizon, all while sitting inside the auditorium.

**Restoration and Expansion**

The restoration of the prescenium arch above the stage.

In June 2001, the Akron Civic Theatre closed its doors for the most comprehensive restoration and expansion project in its history. Over the course of the next sixteen months, just over $19 million was spent bringing the theater up to modern performance and patron standards, and to restoring its failing 70-year old infrastructure.

Following its re-opening in November 2002, the New Civic, along with its partner The University of Akron's E. J. Thomas Hall, continued to play a significant leadership role in downtown revitalization. In May 2003, the Civic began a partnership with the City of Akron to program and operate Lock 3 Live! a new outdoor performance venue featuring more than 80 events and attractions scheduled between Memorial Day and Labor Day.

The success of the Akron Civic Theatre is a testament, particularly during these difficult economic times, to the support of our community and the vision of its leaders. Support for the Civic has come to be understood for what it is - an investment in our community that fuels the economy and drives downtown revitalization by hosting the best in local, national, international entertainment and events.

Behind a restoration and expansion of this magnitude stands a litany of organizations and individuals who have worked diligently in the belief that this project would make the community a better place to live, work and play. This help came locally, regionally and nationally.

We appreciate the support of Summit County and the Summit County Port Authority, with particular appreciation to former Executive Tim Davis, current Executive Jim McCarthy and all the members of County Council. We also thank the State of Ohio, Governor Bob Taft, former Senator Roy Ray, Senator Kevin Coughlin, Representatives Brian Williams and John Widowfield and the

entire Summit County delegation, the City of Akron, Mayor Don Plusquellic and all of City Council, the federal program" Save America's Treasures," Congressman Ralph Regula and former Congressman Tom Sawyer. Private sector leadership grants came from the Knight, GAR, Brennan and Corbin Foundations, The Goodyear Tire & Rubber Company, OMNOVA Solutions and FirstEnergy, as well as leadership gifts from many individuals and corporations. The Civic also appreciates the support of Honorary Campaign Co-Chairs Ann and David Brennan and Francia and Fred Albrecht, and Campaign Co-chairs Nancy Brennan and Sean O'Connor.

They, along with over fifty volunteers, continue to work to raise the funds necessary to complete this project.



*Scaffolding enveloped the Civic's auditorium in the fall of 2002 shortly before its grand reopening.*




Akron Civic Theatre




Lock 3 Live!

Downtown Akron