**IT IS SO ORDERED.**

Dated:  07:20 AM September 06 2007

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

**07-UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.  **07-51884** |
| | ) | |
| **Akron Thermal, Limited Partnership**, | ) | CHAPTER  **11** |
| DEBTOR | ) | |
| | ) | |
| | ) | |
| **Akron Thermal, Limited Partnership**, | ) | |
| PLAINTIFF | ) | **ADVERSARY NO.  07-5131** |
| | ) | |
| vs. | ) | JUDGE MARILYN SHEA-STONUM |
| | ) | |
| **The Community Hall Foundation, dba** | ) | |
| **Akron Civic Theatre** | ) | OPINION ON MOTION OF DEFENDANT |
| **and The City of Akron** | ) | COMMOUNITY HALL FOUNDATION |
| DEFENDANTS. | ) | FOR TEMPORARY RESTRAINING |
| | ) | ORDER AND PRELIMINARY |
| | ) | INJUNCTION |

**PROCEDURAL BACKGROUND**

The Amended Complaint in this case asserts that Defendant Community Hall Foundation, which does business as the Akron Civic Theatre (the "Civic Theatre"), owes Plaintiff Akron Thermal, Limited Partnership ("Akron Thermal") over $181,000 for steam delivered to the premises at 183 South Main Street in Akron (the "Premises"), which the Civic Theatre operates.[1] The Civic Theatre maintains that its obligation for the delivered steam was

---
[1] The Complaint alleges that on the date Akron Thermal filed its chapter 11 petition, the Theatre owed Akron Thermal $181,414.23.

satisfied through an agreement between City of Akron (the "City") and Akron Thermal that these Civic Theatre obligations would be credited against amounts Akron Thermal owed the City. On August 22, 2007, Akron Thermal gave a five-day notice of its intention to terminate service to Civic Theatre. On August 28, Akron Thermal discontinued such service.

Presently pending before the Court is the Civic Theatre's Amended Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 35) (the "Motion"). The original motion was filed on August 24, 2007 (Dkt. 24) and was accompanied by an Emergency Motion to Expedite Hearing (Dkt 25), which the Court granted after an August 27, 2007 telephonic conference (Dkt.37). An evidentiary hearing was held on August 31, 2007 (the "Hearing"); at that time, all parties agreed that the Court's ruling should address both the request for a temporary restraining order and for a preliminary injunction hearing.

Prior to the Hearing, Akron Thermal and the Civic Theatre filed Stipulations of Fact (Dkt. 45), which were read into the record at the Hearing. Separately, Akron Thermal and the Civic Theatre also filed proposed Findings of Fact and Conclusions of Law (Dkt. 35, 39) and briefs in support of their position (Dkt. 34, 38). The City of Akron, who was named as a co-defendant in Akron Thermal's Amended Complaint pursuant to this Court's order of July 19, 2007 (Dkt. 10), joined in the Civic Theatre's Findings of Fact and Conclusions of Law (Dkt. 33), filed its own pre-hearing brief (Dkt. 32), participated fully at the Hearing, and voiced no objections to the Stipulations of Fact.

**DISCUSSION**

The parties agree that in the Sixth Circuit, courts presented with a request for a temporary restraining order or preliminary injunction should weigh the following four factors: 1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; 2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; 3) the probability that granting the injunction will cause substantial harm to others; and 4) whether the public interest is advanced by the issuance of the injunction. Akron Thermal Opposition to Motion (Dkt. 38) at 6; Civic Theatre's Pre-Hearing Brief (Dkt. 34) at 5-6; City of Akron Pre-Hearing Brief (Dkt. 32) at 2-3. These factors "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief"; rather, they are "factors to be balanced, not prerequisites that must be met." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982).

**LIKELIHOOD OF SUCCESS ON THE MERITS**

Based upon the record created in support of the Motion, it appears to the Court that movant Civic Theatre has a fairly substantial likelihood of prevailing in its defense that during the period from August 2005 until the filing of Akron Thermal's chapter 11 case, Civic Theatre was a third party beneficiary of an agreement between the City and Akron Thermal that obligations of the Civic Theatre to pay for steam services were credited against Akron Thermal's obligations to the City. David Leiberth, the City of Akron's Deputy Mayor who was the principal contact for the City with Akron Thermal, testified that sometime in 2005 he told Jeffrey Bees, Akron Thermal's Chief Executive Officer, that the Mayor of Akron had

approved the crediting of the Civic Theatre steam bills against Akron Thermal's obligations to City Akron. The Deputy Mayor testified without contradiction that the Mayor of Akron reiterated his approval of such credits in a March 20, 2006 meeting attended by Mr. Bees, Thomas Clark (President of Ohio Edison), Dennis Prough (Director of Governmental Relations for Ohio Edison), the Mayor and Mr. Leiberth. According to the Deputy Mayor, Mr. Bees never objected to this arrangement and indeed was eager to take the credits. Mr. Leiberth further testified that in proposing these credits, the City was addressing both the need to reduce the amount that Akron Thermal owed the City and the desire of the City to contribute to the health of the Civic Theatre.

The parties stipulated that beginning with the August 2005 invoice from Akron Thermal steam, the Civic Theatre ceased making payments to Akron Thermal. Stipulation ¶ 10. Civic Theatre presented the testimony of Mr. Brian Cummings (who oversaw the financial accounting for the Civic Theatre either as an independent contractor or as the Acting Director of Finance for the Civic Theatre during the relevant time periods) that Akron Thermal did not make any efforts to collect from the Civic Theatre on the steam account until after the June, 2007 filing of the Akron Thermal chapter 11 petition. According to Mr. Cummings, Civic Theatre did not receive any phone calls or past due notices regarding the account. He further testified, and the invoices marked as Akron Thermal's Exhibit 9 confirm, that while Akron Thermal continued to send monthly invoices to the Civic Theatre, those invoices did not reflect a past due amount. In this preliminary context, the Court finds that Akron Thermal's failure to pursue collection from Civic Theatre goes a significant way toward establishing the alleged "crediting agreement" between the City and Akron Thermal.[2]

The claim that Akron Thermal never agreed to treat the Civic Theatre obligations through credits against amounts payable to the City of Akron also appears, on the current record, inconsistent with documents prepared by Akron Thermal and delivered to the City. These documents, which were prepared by Janet D. Stott (Controller for Akron Thermal),[3] were accepted into evidence as the Civic Theatre's Exhibits A(i), A(ii), B and D. Diane Miller-Dawson (the Finance Director for the City) testified that she understood these documents to accurately reflect the "credits" arrangement by deducting an amount for "Outstanding Accounts Receivable" before striking what the documents describe as "Total due to City of Akron". A separate page in each of these documents detailed the fact that the Civic Theatre accounts were included in the "Outstanding Accounts Receivable" line. [4]

---

[2] Although Mr. Richard Pacuk, Akron Thermal's General Manager, testified that Akron Thermal refrained from pursuing the Civic Theatre because it did not want to upset City officials (who Akron Thermal hoped would agree to restructure all of Akron Thermal's various obligations to the City), such a concern is not necessarily inconsistent with the proposition that Akron Thermal had agreed to and welcomed the Civic Theatre credits; the Court also notes that Mr. Bees, rather than Mr. Pacuk, is probably the most reliable source of information on the question of such an agreement, but Akron Thermal chose not to offer testimony from Mr. Bees. It is of course open to Akron Thermal to present Mr. Bees at any trial on the merits in this case.

[3] Because Ms. Stott was unavailable to give testimony at the Hearing, the parties agreed to make her August 29, 2007 deposition a part of the record, subject to Akron Thermal's objections on specified portions of her testimony, which the Court overruled.

[4] Although Ms. Stott testified in her deposition that the City "had not given [the credits] to us" (Stott Dep. at 13, 15) and that the documents "were prepared as a beginning step as part of our restructuring", that testimony is

Akron Thermal contends that any evidence regarding an agreement to credit the Civic Theatre's steam bill to Akron Thermal's payables is barred by Ohio's Statute of Frauds. That statute reads, in relevant part:

> No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person . . . unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

Ohio Rev. §1335.05.

The Court finds that the Statute of Frauds does not apply to the question whether there was a "crediting agreement" between Akron Thermal and the City with respect to Civic Theatre obligations. The Amended Complaint does not seek to recover upon a "special promise" by the City to answer for the debt, default, or miscarriage of the Civic Theatre. Rather, the Civic Theatre has raised in its defense that it is the third-party beneficiary of an oral agreement between the City and Akron Thermal to satisfy the Civic Theatre's obligation through such credits, and the evidence elicited at the Hearing shows that the City does not contest such an agreement but rather strongly believes that the agreement was in place. The dispute that the evidence is intended to address is **not** whether the City made a "special promise" to pay hard currency for the Civic Theatre's steam bill, but rather whether the City and Akron Thermal agreed that Akron Thermal's obligations to the City of Akron would be credited against the Civic Theatre's monthly use of steam. Akron Thermal has not cited any legal opinion applying the Statute of Frauds under similar circumstances.

In any event, even if the "crediting agreement" is deemed a "special promise" by the City of Akron to answer for the debt of the Civic Theatre, the "leading object" exception to the Statute of Frauds would apply. Under that exception, "a promise to answer for the debt of another is not within the statute of frauds where the main purpose of the promisor is to further his own business or pecuniary interest." *Hughes v. Miner*, 15 Ohio App.3d 141, 142; 473 N.E.2d 53, 55 (11th Dist. 1984) (*quoting Wilson Floors co. v. Sciota Park Ltd.*, 54 Ohio St.2d 451 at 459, 377 N.E.2d 514 at 519 (1978)). Deputy Mayor Lieberth testified that the City was aware that the Civic Theatre was having significant problems meeting its operating expenses and that the failure of the Civic Theatre would have an extremely adverse, if not fatal, effect on the downtown revitalization effort and on certain contractual obligations of the City, including guarantees of Civic Theatre debts and contractual obligations of the City to Main Street L.L.C. Credits to the City's account receivables from Akron Thermal constituted a portion of the

---

not consistent with either (i) the testimony of Deputy Mayor Leiberth regarding his communications with Mr. Bees and the Mayor's comments at the March 20, 2006 meeting attended by Mr. Bees or (ii) the conduct of Akron Thermal in continuing to supply steam to the Theatre without attempting to collect money from the Civic Theatre, without showing any past due balances on the monthly account statements, and without cutting off the steam services. Movant has presented sufficient evidence for the Court to find there is a substantial likelihood that Ms. Stott was mistaken in this testimony.

City's plan for avoiding such failure and thus protecting the City's business and pecuniary interests. Oral testimony regarding the agreement to recognize such credits is therefore admissible.

Akron Thermal further argues that some of the evidence presented by the Civic Theatre is inadmissible under Federal Rule of Evidence 408 because it consists of statements made or documents prepared for the purpose of restructuring negotiations initiated by Akron Thermal and encompassing all obligations between Akron Thermal and the City. Rule 408, however, applies to promises made or consideration furnished "in compromising or attempt to compromise a claim **which was disputed as to either the validity or amount."** (Emphasis supplied). There was no evidence that anyone disputed how much steam Civic Theatre had used or how much Akron Thermal was charging for that use; Rule 408 is therefore inapplicable. The documents prepared by Ms. Stott are entirely consistent with the testimony of Deputy Mayor Leiberth and Ms. Dawson-Miller that, prior to that document preparation, the City had approved the credits and that Mr. Bees was eager to accept them. Although Ms. Stott asserted in her deposition that the City of Akron had not yet approved the credits,[5] the deposition does not establish that Ms. Stott had any personal knowledge on that point and Aktron Thermal did not present any evidence that the City was at any time contesting the credits.

### IRREPARABLE HARM TO MOVANT

During closing argument, Akron Thermal substantially conceded that without steam, the Civic Theatre will suffer irreparable harm. The Court finds that the testimony of Mr. Howard Parr, Interim Director of the Civic Theatre, confirmed that harm; specifically the Civic Theatre needs to protect its reputation as a venue for major theatrical performances. Once cold weather requiring heat arrives, the Civic Theatre would not be able to operate and would thus be in breach of existing contracts. Moreover, were the status quo of the steam being cut off to continue, the ability of the Civic Theatre to fill open dates would be nonexistent.

### PROBABILITY OF HARM TO OTHERS SHOULD MOTION BE GRANTED

With respect to the harm to Akron Thermal, its Opposition states: "should this Court require Akron Thermal to continue service to the Defendant without payment, Akron Thermal expects that a number of its customers, aware of this Court's ruling, will discontinue payment for the supply of steam services and will expect the free supply of steam, in an attempt to thwart Akron Thermal's reorganization." Opposition to Motion at 14. There was no evidence offered to support Akron Thermal's speculation, however, and the Court concludes that the specter of nonpayment by other customers should not play a role in balancing whether an injunction should issue. Moreover, the Court (by its separate preliminary injunction order) is requiring the Civic Theatre to pay for services provided by Akron Thermal from June 18, 2007 forward.

Akron Thermal also asserts that an injunction directing it to restore steam to the Premises would place Akron Thermal in a position where it must either violate the injunction

---

[5]See notes 3 and 4, *supra*.

or violate a tariff of the Public Utilities Commission of Ohio. Mr. Richard Pucak, General Manager for Akron Thermal, testified that he believed Akron Thermal would have been in violation of that tariff if it had not cut off the steam for the Civic Theatre. The Court has reviewed the relevant sections of the tariff (the entire Akron Thermal tariff having been received in evidence as Civic Theatre's Exhibit C) and concludes that any "violation" would have resulted only if the Civic Theatre's obligation had not been discharged through a credit to Akron Thermal's obligation to the City of Akron. The weight to be given this factor therefore depends upon the likelihood of the Civic Theatre's success on the merits, which the Court has found to be fairly high.

**WHETHER THE PUBLIC INTEREST WILL BE ADVANCED BY ENTRY OF THE REQUESTED INJUNCTION**

As described above, the evidence at the Hearing suggested a high probability of harm to the City's business and pecuniary interests should the Civic Theatre be forced to shut down because it has no steam. Also, Mr. Parr and the Deputy Mayor stressed that the Civic Theatre's operations have a significant ripple effect upon downtown businesses.

The Court further finds that there is a strong public interest in the cultural opportunities created by the ongoing operations of the Civic Theatre, which includes on its 2007 and 2008 schedules the US Air Force Band, the Ballet Theatre of Ohio Repertory, the Cuyahoga Valley Youth Ballet, and the Children's Concert Society, among several other events.

**CONCLUSION**

The Court finds that the Theatre has presented admissible evidence showing a sufficient likelihood of success that, when considered with the strong showing that the shut-down of steam services would cause irreparable harm to the Civic Theatre and would adversely impact the public interest, as well as the lack of any meaningful argument that issuance of the requested injunction would cause harm to Akron Thermal or any other party, balances in favor of issuing an preliminary injunction. The specific terms of that injunction are being set forth in a separate order.

# # #

**cc** (*via* electronic mail):

| | | |
|---|---|---|
| Robert M. Stefancin | *as counsel for* | Akron Thermal, Limited Partnership |
| Christopher J. Niekamp<br>Jonathan P. Blakely | *as counsel for* | The Community Hall Foundation, Inc. |
| Brian K. Skidmore<br>Eric E. Skidmore | *as counsel for* | City of Akron, Ohio |